

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**FILED**

JAN 2 5 2010

CLERK, U.S. DISTRICT COURT,
EASTERN DISTRICT OF CALIFORNIA
BY
                              DEPUTY CLERK

2:10-MC-7 JAM EFB

|  |  |
|---|---|
| MARVIN A. KATZ, et al., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Miscellaneous Case No. |
| | ) |
| MRT, LLC, MRT HOLDINGS, LLC, | ) |
| JAMES CLEMENTS, and | ) |
| ZEINA SMIDI, | ) |
| | ) |
| Defendants. | ) |

## NOTICE OF FILING COMPLAINT AND ORDER APPOINTING RECEIVER

NOTICE IS HEREBY GIVEN that, January 13, 2010, James D. Sallah, Esq. was appointed Receiver over all the assets of Defendants MRT, LLC and MRT Holdings, in the following case: *Marvin A. Katz, et al. vs. MRT, LLC, MRT Holdings, LLC, James Clements, and Zeina Smidi, U.S. District Court, Southern District of Florida, Case No. 07-61438-CIV-Cohn/Seltzer.*

Pursuant to 28 U.S.C. Section 754, attached herewith is a copy of the Complaint filed by the Plaintiffs in this matter, along with a certified copy of the order appointing Mr. Sallah as Receiver.

Dated: January 22, 2010                Respectfully submitted,

                                                _____
                                                Joshua A. Katz, Esq.
                                                Fla. Bar No. 0848301
                                                **SALLAH & COX, LLC**
                                                2101 N.W. Corporate Boulevard, Suite 218
                                                Boca Raton, Florida 33431
                                                Telephone: (561) 989-9080
                                                Facsimile: (561) 989-9020

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MARVIN A. KATZ, ELOISE
DABNEY, RICKY TATE, PATRICIA
A. JACKSON, NYRA HOROWITZ,
PAMELA RICHARD BROWN,
HARRIET GEYER, ANNETTE
SHIRLEY MAIR, LEWIS JIM SEIDEN,
and PHYLLIS SEIDEN,

CASE NO.:

MAGISTRATE JUDGE
SELTZER

CIV-COHN

07-61438

Plaintiffs,

vs.

MRT HOLDINGS, LLC, MRT LLC,
JAMES CLEMENTS, ZEINA SMIDI, and
ANN B. BRADSHAW,

Defendants.
_____/

FILED by _____ D.C.
IN TAKE

OCT - 9 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. • FT. LAUD.

## CLASS ACTION COMPLAINT FOR SECURITIES FRAUD AND FOR THE SALE OF UNREGISTERED SECURITIES

It appears to Plaintiffs, and Plaintiffs allege that:

### OVERVIEW OF DEFENDANTS' FRAUDULENT SCHEME

1.     This class action arose when Defendants MRT Holdings, LLC ("MRT

Holdings"); MRT LLC ("MRT"); James Clements ("Clements"); Zeina Smidi ("Smidi");

and Ann B. Bradshaw ("Bradshaw"); and others fraudulently offered unregistered

securities for sale in a classic Ponzi scheme.

2.     Defendants did this in violation of the registration and anti-fraud

provisions of the federal securities laws. The scheme is based upon investors' purported

"loans" to MRT for MRT to trade foreign currency futures offshore with Swiss banks,

Certified to be a true and
correct copy of the document on file
Steven M. Larimore, Clerk
U.S. District Court
Southern District of Florida
By_____
Deputy Clerk
Date   JAN 2 1 2010

1

and has raised, according to Defendants' own admissions, at least $50 million from several hundred investors.

3.      MRT solicits "loans" or "investments" from unsuspecting investors for the purported purpose of trading "FOREX" futures and options.   In exchange for this investment, MRT promised and, in some cases, has paid rates of interest from about twelve percent annually (12%) to as high as over eleven percent (11%) a month.

4.      MRT's investment program operated as a Ponzi scheme, *i.e.*, a scheme whereby returns are paid to investors from monies contributed by later investors.

5.      The investments constitute investment contracts, and therefore, qualify as securities under Section 2(a)(1) of The Securities Act of 1933, 15 U.S.C. § 77b(1)(1), and Section 3(a)(10) of The Securities Exchange Act of 1934, 15 U.S.C. § 78(a)(10).

6.      No registration statement has ever been filed in connection with the investment contracts offered and sold by Defendants, and no exemption from registration applies. Few, if any, of the purchasers or offerees qualified as accredited investors under the federal securities laws.

7.      Defendants issued materials and made statements to investors that MRT's FOREX trading activities are a profitable business.   Clements and Bradshaw have repeatedly represented to investors that MRT is a profitable business. But, in fact, MRT; Clements; Bradshaw; and others are operating in the manner of a Ponzi scheme and are suffering huge losses from whatever business operations they are engaged in.

8.      MRT depends upon the sale of new investment contracts to meet its current financial obligations, such as interest payments and capital refunds to current investors.

2

9.      MRT does not now possess the financial resources to make interest payments to current investors.  In fact, some of the named plaintiffs here have not received any payments since April 2007.

10.     Based upon the foregoing, Plaintiffs immediately seek an order prohibiting the destruction of documents, preliminary and permanent injunctions, accountings, disgorgement, together with prejudgment interest against MRT, Clements, and Bradshaw, and an asset freeze as to Clements and Bradshaw, based upon the Defendants' flagrant violations of Sections 5(a), 5(c), 15 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77e(a), 77e(c), 77o and Sections10(b) and 20(a) of The Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.

## JURISDICTION AND VENUE

11.     Plaintiffs bring this action under Sections 5(a), 5(c), and 15 of the Securities Act, Section 10(b) of the Exchange Act, and Exchange Act Rule 10b-5.

12.     This Court possesses subject matter jurisdiction under 28 U.S.C. § 1331, Securities Act § 22(a), 15 U.S.C. § 77v(a), and Exchange Act § 27.

13.     The Defendants, directly and indirectly, made use of the mails, telephones, and internet, to effect their fraudulent scheme.

14.     Certain acts, misstatements, and courses of business that violated the Securities Act and the Exchange Act have occurred in the Southern District of Florida. MRT maintained or maintains its principal place of business at 7744 Peters Road, Suite 119, Plantation, Florida 33324.

15.     The Defendants, unless restrained or enjoined by this Court, will continue to violated the federal securities laws, to the great detriment of the class members.

### THE DEFENDANTS

16.     MRT Holdings, it is believed, is a ficticious name for MRT, LLC, which is an LLC, organized under the laws of the State of Florida.  MRT Holdings and MRT maintain their principal places of business at 7744 Peters Road, Suite 119, Plantation, Florida 33324.

17.     MRT, LLC is an entity organized under the laws of the State of Florida. Its registered agent is listed on www.sunbiz.org as Accupay Services Corporation, 4801 South University Drive, Suite 300, Davie, Florida 33328.

18.     James Clements resides at 3771 State Road 84, #203, Plantation, Florida 33324.  According to MRT's listing on www.sunbiz.org, Clements serves as a manager for MRT.  In addition to being a primary violator, Clements acts as a controlling person under Securities Act § 15 in the offering and sale of unregistered securities.

19.     Zeina Smidi resides at 721 North Pine Island Road, Apt. 305, Plantation, Florida 33324.  According to MRT's listing on www.sunbiz.org, Smidi serves as a manager for MRT.  In addition to being a primary violator, Smidi acts as a control person under Securities Act § 15 in the offering and sale of unregistered securities.

20.     Ann B. Bradshaw is a suspended member of the Florida Bar, Florida Bar No. 84850.  Bradshaw resides at 5364 S.W. 150 Terrace, Miramar, Florida in an exclusive, gated community called "Reserve at Huntington."  On one occasion, Bradshaw received at least $170,000 in proceeds from illegal securities offerings from purchasers of

4

MRT's unregistered securities. In addition to being a primary violator, Bradshaw acted as a control person under Securities Act § 15.

## THE PLAINTIFFS

21.     Marvin A. Katz, who is 80 years old and retired from the United States Navy after a career as a naval aviator, resides in Boyton Beach, Florida. Katz invested approximately $22,000 of his retirement savings with MRT. Mr. Katz has not received his interest payment for September, 2007, nor has he received the return of part of his principal investment that he has repeatedly requested and that he needs to pay for medical expenses.

22.     Eloise Dabney resides in Pembroke Pines, Florida. She invested $8,000 of her money with MRT.

23.     Ricky Tate resides in Pembroke Pines, Florida.   He invested about $90,000 of his money with MRT. Mr. Tate has not received any interest payments in at least five months, despite making repeated requests for his payments.

24.     Patricia Jackson resides in Miami, Florida and invested significant funds with MRT.

25.     Nyra Horowitz resides in Boyton Beach, Florida and invested significant funds with MRT.

26.     Pamela Richard Brown resides in Miami, Florida and invested significant funds with MRT.

27.     Harriet Geyer is a retired widow.  She resides in Boyton Beach, Florida and invested $140,000, fully one-half of her retirement savings, with MRT. MRT

5

promised Geyer twenty-four percent (24%) interest but has failed to meet its obligations to Geyer.

28.    Annette Shirley Mair resides in Lake Worth, Florida and invested significant funds with MRT.

29.    Lewis J. Seiden and Phyllis Seiden reside in Boyton Beach, Florida and invested significant funds with MRT.

## FACTS

30.    Beginning in or about March, 2006 through the present, MRT, under Clements's direction, offered promissory note investments to the general public.  The investments were offered for the purpose of allowing MRT to trade in foreign currencies, purportedly through unidentified Swiss banks.    In return for this investment capital, MRT and the individual defendants promised investors fixed rates of return as high as over one hundred percent (100%) annually, payable in monthly interest payments.

31.    The investments were sold through various means, including direct solicitations by Clements and Bradshaw; internet advertising; sales meetings held in Tennessee; and through a pyramid marketing scheme.

32.    MRT purports to manage its FOREX trading activities.

33.    MRT, the individual defendants, and yet-unnamed co-conspirators have used the United States mails, telephones, and the internet to market their investment contracts.

34.    MRT operates a website, www.mrt.moonfruit.com, which contains statements like "MRT is a[n] international management company that specializes in many different products and services. We currently offer two different types of accounts,

including a CD style account and a Savings style account. Our diversified portfolio includes stocks, bonds, currency trading, credit derivatives, arbitrage, metals, and real estate. Our bankers, traders and financial advisors are all employed by of affiliated with Swiss banks."

35.    The website offers a brief description of MRT and brief descriptions of MRT's purported business. Both are false and falsely represent as follows:

> MRT Holdings can receive, manage, and invest third party Funds. It can conduct business with clients worldwide through the internet. * * * MRT Holdings offers savings accounts, investment accounts, brokerage services, and asset protection services. * * * Our diversified portfolio includes stocks, bonds, currency trading, credit derivatives, arbitrage, metals, and real estate. One investment strategy used is Algorithms. Algorithms is a mathematical computerized technology that provides significant benefits in investing and trading applications, such as, stock prices, determining asset allocation, forecasting portfolio changes and prediction of foreign exchange rates. * * * Our bankers, traders and financial advisors are all employed by or affiliated with Swiss banks. Each one holds the proper credentials to meet Swiss law and the banks['] requirements. They are all CFA's (Certified Financial Advisors) and/or CAIA's (Chartered Alternative Investment Analysts) and hold a BA and MBA.

36.    In March 2007, MRT sent out a letter to its current investors. The letter continued to mislead investors by saying, for example, "MRT LLC [h]as had two great years in our currency trading accounts." That letter is attached hereto as Exhibit A and is incorporated herein by reference.

37.    During a personal meeting at Shells Restaurant with investors like Plaintiff Ricky Tate, Defendant Clements repeated statements that he, Bradshaw, and MRT has made to the public at large through MRT's website. During this April 2006 meeting at Shells Restaurant, Clements knowingly and falsely stated that MRT traded in foreign

7

currencies outside of the United States and did so through Swiss banks, which he never identified. Clements also said that investors' interest payments depended entirely upon the efforts and success of MRT's activities in trading currency options and various securities. Clements further misrepresented that MRT's activities were profitable.

38.     During sales meetings, held in Tennessee, Bradshaw and Clements promised potential investors that investors could become millionaires if the investors purchased MRT's investment contracts.

39.   In fact, all of the statements alleged herein were false and misleading when those statements were made by the Defendants. In fact, MRT's trading activities, if any occurred at all, caused MRT to incur huge losses. MRT was not profitable. It was, in fact, a classic Ponzi scheme that offered and sold unregistered investment contracts.

40.     Defendants also knowingly misled investors to believe that their offering of investment contracts was, in all respects legal, when, in fact, Defendants knew it was not.

41.     MRT has consistently been dependent upon new investors to fund its current obligations to investors.

42.     MRT's true financial condition and its total dependency upon new investors has not been revealed to the class.

43.     The Class has reasonably relied on Defendants' misstatements identified herein, and the misstatements and wrongs complained of herein are both the direct and proximate cause of the class's financial losses.

8

## CLASS ALLEGATIONS

44.     The Class are purchasers of MRT's investment contracts.

45.     The Class Period runs from March 1, 2006 through the present.

46.     Plaintiffs bring this lawsuit as a federal class action under Rules 23(a) and
23(b)(3) on behalf of all purchasers of MRT's investment contracts, who purchased
during the Class Period, and who were damaged thereby. Excluded from the Class are the
Defendants, MRT's officers, executives, and members of their immediate families, their
legal heirs or representatives, successors or assigns, or any entities in which Defendants
have or had a controlling interest.

47.     The members of the Class are so numerous that joinder of all putative
members would not be practical.

48.     Plaintiffs' claims are typical of all class members in that all class members
are similarly harmed by Defendants' willful and intentional violation of the federal
securities laws.

49.     Plaintiffs will fairly and adequately represent the interests of the Class and
have retained counsel experienced in prosecuting federal securities class action litigation.

50.     Common questions of law and fact exists and predominate over any
individual legal or factual questions. Those common questions include:

        (a)   Whether Defendants' conduct violated the federal securities laws, as
            alleged herein;

        (b)   Whether Defendants offered and sold unregistered securities;

9

    (c)   Whether Defendants' statements to the investing public during the Class Period materially misrepresented MRT's business and financial condition;

    (d)   To what extent the Class suffered damages, and whether the Class stands entitled to rescind their transactions with MRT.

    51.    A Class Action presents the superior means to all other means of resolving the Class's claims against Defendants.

## SCIENTER ALLEGATIONS

    52.    As alleged herein, Defendants acted intentionally or with deliberate recklessness in that they knew their securities were unregistered and that the statements they disseminated to the investing public were false when made.

    53.    Defendants were motivated to engage in this fraudulent conduct because, it is believed, that Defendants, as is the case in every Ponzi scheme, financed extravagant lifestyles for themselves from the proceeds of their illegal securities offerings.

## COUNT I—VIOLATIONS OF SECURITIES ACT SECTION 5(a)

    54.    Plaintiffs here incorporate by reference paragraphs 1 through 55.

    55.    From at least March 1, 2006 through the present, Defendants, directly and indirectly, singly and in concert, have, and unless enjoined will continue to abuse the instrumentalities of interstate commerce to offer and sell unregistered securities in unexempt offerings to the general public.

10

## COUNT II—VIOLATIONS OF EXCHANGE ACT
### SECTION 10(b) AND RULE 10b-5

56.     Plaintiffs here incorporate by reference paragraphs 1 through 55.

57.     During the Class Period alleged herein, Defendants have employed schemes, and devices to make material and misleading statements of fact, and have omitted to state material facts necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; and

58.     Defendants have engaged in practices and a course of business that has operated as a fraud and deceit upon all Class Members.

59.     Defendants knowingly, or with deliberate recklessness, engaged in the violations of the federal securities laws described herein, and they knowingly, or with deliberate reckless, made the misstatements alleged herein.

60.     The Defendants, via their website and wide dissemination through public meetings, perpetrated a fraud upon the market.

61.     Further, the Class reasonably relied on Defendants' statements to them and purchased MRT's unregistered securities, and now, have suffered great financial loss because of that reliance.

## COUNT III—CONTROL PERSON LIABILITY UNDER SECURITIES ACT § 15
### AGAINST DEFENDANTS CLEMENTS, SMIDI, and BRADSHAW

62.     Plaintiffs incorporate here by reference paragraphs 1 through 55.

63.     Defendant Clements, through his position as a manager for MRT, possessed the power and authority to cause MRT, through its website, to offer unregistered securities for sale in a Ponzi scheme to the investing public.

11

64.     Defendant Smidi, through her position as a manager for MRT, possessed the power and authority to cause MRT, through its website, to offer unregistered securities for sale in a Ponzi scheme to the investing public.

65.     Defendant Bradshaw, through her senior position with MRT, possessed the power and authority to cause MRT, through its website, to offer unregistered securities for sale in a Ponzi scheme to the investing public.

66.     By reason of such conduct, the individual defendants are here liable under Securities Act § 15.

### COUNT IV—CONTROL PERSON LIABILITY UNDER EXCHANGE ACT SECTION 20(a) AGAINST DEFENDANTS CLEMENTS, SMIDI, and BRADSHAW

67.     Plaintiffs here reincorporate paragraphs 1 through 55.

68.     Defendant Clements, through his position as a manager for MRT, possessed the power and authority to cause MRT, through its website, to offer unregistered securities for sale in a fraudulent Ponzi scheme to the investing public.  He controlled, authored, or approved the false and misleading statements MRT publicly made.

69.     Defendant Smidi, through her position as a manager for MRT, possessed the power and authority to cause MRT, through its website, to offer unregistered securities for sale in a fraudulent Ponzi scheme to the investing public.  She controlled, authored, or approved the false and misleading statements MRT publicly made.

70.     Defendant Bradshaw, through her senior position with MRT, possessed the power and authority to cause MRT, through its website, to offer unregistered

12

securities for sale in a fraudulent Ponzi scheme to the investing public. She controlled, authored, or approved the false and misleading statements MRT publicly made.

71.    By reason of such conduct, the individual defendants are here liable under Exchange Act § 20(a).

WHEREFORE, Plaintiffs demand injunctive relief; appointment of a receiver; an order appointing them Lead Plaintiffs; an order certifying the Class; a jury trial on all issues so triable; an order awarding them rescission for the unregistered securities sold to them by Defendants; and an award of damages, including a reasonable attorney's fee.

DATED: October 5, 2007.

SONN & EREZ, PLC

Jeffrey R. Sonn, Esq.
Florida Bar No. 773544
jsonn@sonnerez.com
500 East Broward Blvd., Suite 1600
Fort Lauderdale, FL 33394
(954) 763-4700
(954) 763-1866 (facsimile)

# EXHIBIT A

# MRT HOLDINGS

Eloise Dabney
16420 N.w 18th Street
Pembroke Pines, FL 33028

Dear Friends, Clients, and Referral Account Managers,

MRT LLC Has had two great years in our currency trading accounts. We first started out with a backyard BBQ idea and shared "The Secret" movie concept with you. We knew as a team of friends and family that we were working toward something great.

 We did it, we have grown into a $50,000,000.00 success. MRT HOLDINGS is proud and thankful for our great success. Over these past years we continued to deliver your interest rate to each one of you even though there were some extremely lean months in currency trading. We knew we had to keep our commitments and promises to you as a lender to our company. We've had a great run, and have gained substantial financial rewards. Time and the economic markets are changing and so is our companies' philosophy.

For those of you that follow the stock market and Wall Street, economic reports are mixed and have had their seesaw days. The world picture has changed along with our global emerging markets. We have hired advisors, consultants to help us make a prudent, responsible decision for our company and for you as a financial lender to our company.

We have been in transition for the last 6 months. We shared with you in our last letter that we have gone off shore. **MRT HOLDINGS is a licensed international capital management firm that is based in Nassau.** As with many other large corporations and companies, we feel this is the most productive and the best financial move for you and our company. It allows us to be a capital diversified company, to guard your assets and give all of us financial privacy.

Our company has chosen to use the experience of Switzerland's oldest, highly professional, prestigious and prolific Swiss banking services. So many companies, corporations, rich investors, and the wealthiest people of the world have been invested overseas for years.  We want our money working with the best Swiss Banks in Switzerland and advisors.

MRT HOLDINGS is entering into a new journey with the same ideals, reliability, commitments, responsibility, and focus. We have been advised to exit the risky market of currency trading and we began searching for a high yielding product that also offered a high level of security.

We introduce to you our Fixed Rate Account which **assigns a promissory note to your principal and as history dictates, pays up to 25% a year. The Fixed Rate Account** has an option for renewal every year and funds may be withdrawn once the note has expired (12 months).

We also offer a **High Yield Savings Account which pays up to 15% a year.** The Savings Account allows for withdrawals monthly.

**July 1st will be the last statement with your present interest rate with MRT LLC. As of this date, all accounts will be automatically transferred to MRT Holdings in a High Yield Savings Account.** We urge you to complete the new product forms that we have provided you with. This will assure you a smooth and rapid transfer. We want your money to keep working and earning great returns for you.

Completing your transfer is easy:

1. Fill out the forms included and return to us at 7744 Peters Road #119, Plantation FL 33324.
   *Note: On Transfer Agreement Form, please include your 7/1/7 Balance.*
2. Request a promissory note at www.mrtholdings.com.pa.  (Click on Deposits) and complete the online form. A promissory note will be emailed to you within 48 hours. Complete and return the note to the address above.

**Please note**:

If you want monthly disbursements, be sure not to put all your funds in our Fixed Rate account. You might want to open High Yield Savings account as well for your disbursements.

All future deposits MUST meet the minimum required deposit amount stated from the MRT HOLDINGS website under that account type. The minimum amount required to open an account is $1,000.00 for the High Yield Savings Account and $5,000.00 for the Fixed Rate Account.

Your letters of gratitude, inspiration, and joy have made a difference, and warmed our hearts.
 We look to the future with you as our client, to keep our goals and financial prosperity on course.

Sincerely,

The MRT Support Team
Jim Clement and Zeina Smidi

Attachment: NEW ACCOUNT APPLICATION, TRANSFER AGREEMENT

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-61438-CIV-COHN/SELTZER

MARVIN A. KATZ, et al.,

      Plaintiffs,

v.

MRT, LLC, MRT HOLDINGS, JAMES
CLEMENTS and, ZEINA SMIDI

      Defendants.

_____/

## ORDER GRANTING PLAINTIFFS' MOTION TO APPOINT RECEIVER

      **WHEREAS** Plaintiffs filed a Motion to Appoint Receiver [DE 88] for Defendants

MRT, LLC, a Florida corporation, and MRT Holdings LLC, a Republic of Seychelles

corporation (collectively "Defendants"), with full and exclusive power, duty, and authority

to: administer and manage the business affairs, funds, assets, choses in action and any

other property of the Defendants; marshal and safeguard all of the assets of the

Defendants; and take whatever actions are necessary for the protection of the Plaintiffs;

and

      **WHEREAS** the Plaintiffs set forth grounds for appointment of a receiver over the

Defendants and the Defendants do not oppose the appointment of a receiver; and

      **WHEREAS** the Plaintiffs have submitted the credentials of a candidate to be

appointed as receiver of the assets, properties, books and records, and other items of

the Defendants including any properties, assets and other items of the Defendants held

in the names of Defendants' principals, and the Plaintiffs have advised the Court that

this candidate is prepared to assume this responsibility if so ordered by the Court;

**IT IS THEREFORE ORDERED AND ADJUDGED** that Plaintiffs' Motion to
Appoint Receiver [DE 88] is **GRANTED. James D. Sallah, Esq.** is hereby appointed
the Receiver for the Defendants and is authorized and empowered to:

1.    Take immediate possession of all the Defendants' property, assets and estates of
every kind, whatsoever and wheresoever located belonging to or in the possession of
the Defendants, including but not limited to all offices, rights of action, papers, data
processing records, evidences of debt, certificates of deposit, bank accounts, stocks,
bonds, debentures and other securities, and all real property of the Defendants
wherever situated, and to administer such assets as required to comply with the
directions contained in this Order, and to hold all other assets pending further order of
this Court.

2.    Investigate the manner in which the affairs of the Defendants were conducted and
institute such actions and legal proceedings, for the benefit and on behalf of the
Defendants and their investors and other creditors, as the Receiver deems necessary
against those individuals, corporations, partnerships, associations and/or
unincorporated organizations, which the Receiver may claim have wrongfully, illegally or
otherwise improperly misappropriated or transferred money or other proceeds directly
or indirectly traceable from investors in the Defendants; provided such actions may
include but not be limited to, seeking imposition of constructive trusts, disgorgement of
profits, recovery and/or transfers under Florida Statute § 726.101, et. seq. or otherwise,
rescission and restitution, the collection of debts, and such orders from this Court as
may be necessary to enforce this Order.

2

Case 2:10-mc-00007-9AW-ETB   Document 1   Filed 01/26/10   Page 21 of 26

3.     Present to this Court a report reflecting the existence and value of the assets of

the Defendants and of the extent of liabilities, both those claimed to exist by others and

those which the Receiver believes to be legal obligations of the Defendants. **Within**

**two weeks of the date of this Order**, the Receiver shall file a proposed schedule for

the submission of the foregoing report(s).

4.     Appoint one or more special agents, employ legal counsel, actuaries, accountants,

clerks, consultants, and assistants as the Receiver deems necessary and to fix and pay

their reasonable compensation and reasonable expenses of taking possession of the

Defendants' assets and business, and exercising the power granted by this Order,

subject to approval by this Court at the time the Receiver accounts to the Court for such

expenditures and compensation.

5.     Engage persons in the Receiver's discretion to assist the Receiver in carrying out

the responsibilities, including but not limited to, the United States Marshal's Service or a

private security firm.

6.     Defend, compromise or settle legal actions in which any or all of the Defendants

are  a party, commenced either prior to or subsequent to this Order, with authorization

of this Court; except, however, in actions where the Defendants are nominal parties, as

in certain foreclosure actions where the action does not effect a claim against or

adversly affect the assets of the Defendants, the Receiver may file appropriate

pleadings at the Receiver's discretion.  The Receiver may waive any attorney-client or

other privilege held by the Defendants.

7.     Assume control of, and be named as authorized signatory for, all accounts at any

3

bank, brokerage firm or financial institution which has possession, custody or control of any assets or funds, wherever situated, of Defendants and, upon order of this Court, of any of Defendants' subsidiaries or affiliates, provided that the Receiver deems it necessary.

8.     Make or authorize such payments and disbursements from the funds and assets taken into control, or thereafter received by the Receiver, and incur, or authorize the incurreence of, such expenses and make, or authorize the making of, such agreements as may be reasonable, necessary and advisable in discharging the Receiver's duties.

9.     Have access to and review all mail of the Defendants (except for mail that appears on its face to be purely personal or attorney-client privileged) received at any office of the Defendants.  All mail addressed to any of the Defendants that is opened by the Receiver that, upon inspection, is determined by the Receiver to be personal or attorney-client privileged, shall be promptly delivered to the addressee and the Receiver shall not retain any copy.

    **IT IS FURTHER ORDERED AND ADJUDGED** that in connection the with the appointment of the Receiver above:

10.     The Defendants, and all of their current or former directors, officers, agents, employees, attorneys, attorneys-in-fact, and other persons who have custody, possession, or control of any assets, books, records, or other property of the Defendants shall deliver forthwith upon demand such property, monies, books and records to the Receiver, and shall forthwith grant to the Receiver authorization to be a signatory as to all accounts at banks, brokerage firms or financial institutions which have possession, custody or control of any assets or funds in the name of or for the

4

benefit of the Defendants.

11.    All banks, financial institutions, and other business entities, which have possession, custody or control of any assets, funds, records or accounts in the name of, or for the benefit of, the Defendants shall cooperate expeditiously in the granting of control and authorization as a necessary signatory as to said assets and accounts to the Receiver.

12.    Unless authorized by the Receiver, the Defendants and their principals shall take no action, nor purport to take any action, in the name of or on behalf of the Defendants.

13.    The Defendants and their current or former principals, respective officers, agents, employees, attorneys, and attorneys-in-fact shall cooperate with and assist the Receiver.  The Defendants and their current or former principals, respective officers, agents, employees, attorneys, and attorneys-in-fact shall take no action, directly or indirectly, to hinder, obstruct, or otherwise interfere with the duties or to interfere in any manner, directly or indirectly, with the custody, possession, management, or control by the Receiver of the funds, assets, premises, and choses in action described above.

14.    The Receiver, and any counsel whom the Receiver may select, are entitled to reasonable compensation from the assets now held by or in the possession or control of or which may be received by the Defendants; said amount or amounts of compensation shall be commensurate with their duties and obligations under the circumstances, subject to approval by the Court.

15.    The Receiver is fully authorized to proceed with any filing the Receiver may deem appropriate under the Bankruptcy Code as to the Defendants.

16.    Title to all property, real or personal, all contracts, rights of action and all books

5

and records of the Defendants and their principals, wherever located within or without this state, is vested by operation of law in the Receiver.

17.	Upon request by the Receiver, any company providing telephone services to the Defendants shall provide a reference of calls from any number presently assigned to the Defendants to any such number designated the Receiver or perform any other changes necessary to the conduct of the receivership.

18.	Any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to the Defendants shall maintain such service and transfer any such accounts to the Receiver, unless directed to the contrary by the Receiver.

19.	The United States Postal Service is directed to provide any information requested by the Receiver regarding the Defendants, and to handle future deliveries of the mail of the Defendants as directed by the Receiver.

20.	No bond shall be required in connection with the appointment of the Receiver. Except for acts of willful misconduct or gross negligence, the Receiver shall not be liable for any loss or damage incurred by the Defendants or by the Receiver's officers, agents or employees, or any other person, by reason of any act performed or omitted to be performed by the Receiver in connection with the discharge of the Receiver's duties and responsibilities.

21.	Service of this Order shall be sufficient if made upon the Defendants and their principals to the attention of their counsel, by facsimile, overnight courier or email.

22.	In the event that the Receiver discovers that funds of persons who have invested in the Defendants have been transferred to other persons or entities, the Receiver shall apply to this Court for an order giving the Receiver possession of such funds and, if the

6

Receiver deems it advisable, extending this receivership over any person or entity holding such investor funds.

23.     This Court shall retain jurisdiction of this matter for all purposes.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 13th day of January, 2010.

**JAMES I. COHN**
**United States District Judge**

Copies provided to:

Counsel of record

Certified to be a true and correct copy of the document on file
Steven M. Larimore, Clerk
U.S. District Court
Southern District of Florida
By _____
Date JAN 2 2 2010    Deputy Clerk

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the foregoing mailed to the persons set forth below on _11_ day of January, 2010:

Inger M. Garcia, Esq. (Attorney for James Clements and Zeina Smidi).
P.O. Box 11933
Ft. Lauderdale, Florida 33339
Telephone: (954) 894-9962
Facsimile: (954) 446-1635
Email: Attorney@IngerGarcia.com

Jeffrey Sonn, Esq. (Attorney for Plaintiffs)
Broward Financial Centre
500 E. Broward Blvd., Suite 1600
Ft. Lauderdale, FL 33394
Telephone: (954) 763-4700
Facsimile: (954-763-1866
Email: jsonn@sonnerez.com

Joshua A. Katz, Esq.

2